# EXHIBIT 1

## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT ("Agreement") is made and entered by and between Jill Reid ("Reid"), George Reid, SunState Insurance Agency, which was named in Reid's Complaint as LaScala Insurance, Inc. d.b.a. SunState Insurance LaScala Agency ("SunState"), Jeffery LaScala ("LaScala") and Lisa LaScala (collectively, the "Parties").

### RECITALS

A.    Reid was hired by SunState in approximately May 2007.

B.    On or about June 23, 2008, Reid and SunState entered into a Producer Agreement pursuant to which Reid agreed to "contract with [SunState] to act as an independent contractor producing and servicing insurance products for SunState."

C.    On or about January 27, 2010, SunState notified Reid that the Producer Agreement was terminated.

D.    Disputes have arisen between the Parties with respect to events alleged to have occurred during each of the time periods described above, including but not limited to the nature of the relationship between Reid and SunState (employee versus independent contractor), Reid's entitlement to overtime compensation, and the number of hours Reid worked in excess of 40 in any given week.

E.    Reid has asserted various claims against SunState, Jeffery LaScala and Lisa LaScala (collectively, the "Defendants") in a civil action pending in the United States District Court for the District of Arizona (the "Court"), where it is designated "Jill Reid, a married woman, vs. LaScala Insurance, Inc. d.b.a. SunState Insurance Agency and Sun State Insurance LaScala Agency, a domestic corporation, and Jeffery T. and Lisa LaScala, husband

and wife, No. CV10-2410-PHX-JRG" (the "Lawsuit").  In the Lawsuit, SunState also asserted counterclaims against Reid and George Reid, as husband and wife.

     F.    Defendants have denied the material allegations made against them in the Lawsuit, and have expressly denied any liability whatsoever to Reid.

     G.    Reid and George Reid have denied the material allegations made against them in the Lawsuit, and have expressly denied any liability whatsoever to SunState.

     H.    The Parties desire to settle and compromise all claims asserted in the Lawsuit, and any and all other disputes between them.  The Parties, through counsel and a mediator, Christopher Skelly, have carefully negotiated, at arms-length, a settlement of all of the Parties' claims asserted in the Lawsuit, including but not limited to Reid's claims arising under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), in order to achieve a fair and reasonable compromise of all disputed issues of fact and law in order to fully and finally resolve the Parties' claims in the Lawsuit.

### AGREEMENT

For valuable consideration, the receipt of which is hereby acknowledged, the Parties agree as follows:

    1.    Upon execution of this Agreement, the Parties will promptly execute and file with the Court a Joint Motion to Approve Settlement and Dismiss Lawsuit With Prejudice in No. CV10-2410-PHX-JRG in the form attached hereto as Exhibit A, and lodge with the Court an accompanying Order of Dismissal With Prejudice in the form attached hereto as Exhibit B.

    2.    Upon filing the Joint Motion To Approve Settlement and Dismiss Lawsuit With Prejudice referred to in paragraph 1 of this Agreement, Defendants will pay $12,500 to Reid (consisting of $6,250 in wages and $6,250 in liquidated damages).

2

3.      Upon filing the Joint Motion To Approve Settlement and Dismiss Lawsuit With Prejudice referred to in paragraph 1 of this Agreement and SunState's receipt of a properly completed and signed W-9 form, Defendants will also pay $12,500 to Reid's attorney, Michelle R. Matheson, Esq., ("Matheson") of Matheson & Matheson, P.L.C.

4.      Commencing 30 days after the payments referenced in paragraphs 2 and 3 of this Agreement are made, Defendants will pay an additional $12,500 to Matheson in five (5) equal monthly installments of $2,500.

5.      The gross amount of $25,000 paid to Matheson as outlined in paragraphs 3 and 4 of this Agreement are in satisfaction of Reid's disputed claim for attorneys' fees and costs alleged to have been incurred by her as a result of the matters alleged in the Lawsuit. Reid and Matheson understand and agree that Defendants will issue a 1099 form to Matheson and Matheson, P.L.C. reflecting these payments. It is further expressly understood and agreed by and between the Parties that Matheson will be solely responsible for the payment of any federal or state income taxes, any applicable FICA and/or FUTA taxes, and any interest or penalties attributable to the payment described in this paragraph.

6.      The checks for the settlement payments described in paragraphs 2 and 3 of this Agreement shall be delivered to Matheson within 5 days of the Court's approval this Agreement and dismissing with prejudice the Parties' claims.

7.      Commencing 30 days after the last monthly installment payment referenced in paragraph 4 of this Agreement, Defendants will pay $17,500 to Reid in seven (7) equal monthly installments of $2,500. For each individual $2,500 payment to Reid, $1,250 will consist of wages and $1,250 will consist of liquidated damages.

3

8.    The monthly payment obligations outlined in paragraphs 4 and 7 of this Agreement will be evidenced by promissory notes from Defendants in the forms attached hereto as Exhibit C.  Defendants hereby agree that if they default on the notes, Defendants will consent to a judgment against them for the unpaid amount, and the judgment will allow for interest in the event of default at the Arizona statutory rate of 10%.

9.    The gross amount of $30,000 paid to Reid as outlined in paragraphs 2 and 7 of this Agreement are in satisfaction of her disputed claims for unpaid overtime under the FLSA (Count I of the Complaint).  It is expressly understood by and between the Parties that $15,000 of this amount is subject to withholding of federal and state income taxes, and any applicable FICA and/or FUTA taxes, and that Reid's execution of this Agreement constitutes her authorization and direction to SunState to withhold such taxes and remit them to the appropriate authorities.

10.    Reid understands that the settlement sums described in paragraphs 2 – 8 of this Agreement shall constitute the sole financial obligation of Defendants to Reid and her attorneys under this Agreement.  Other than as set forth above, the Parties each will bear their own attorneys' fees and costs.

11.    Except as otherwise expressly provided herein, Reid hereby fully releases and forever discharges Defendants, any and all of their successors, affiliates, subsidiaries, parent companies, and assigns, and any and all of the agents, principals, employers, attorneys, or employees of any of them, from any and all claims or liabilities of any nature whatsoever that she has, or claims to have, arising out of any actions whatsoever undertaken, or not undertaken, by Defendants, any and all of their successors, affiliates, subsidiaries, parent companies and assigns, and any and all of the agents, principals, employers, attorneys, or employees of any of

4

them, as of the date of execution of this Agreement.  Except as otherwise expressly provided herein, this release includes but is not limited to any and all claims based upon any alleged failure to pay wages or other benefits (including but not limited to claims under state and federal law for unpaid wages, overtime, meal or rest period penalties, on-call time, interest, and punitive and/or exemplary damages), alleged age discrimination, race or national origin discrimination, sex discrimination, including sexual harassment, religious discrimination, handicap, disability, or pregnancy discrimination, retaliation, alleged breach of contract, express or implied, alleged breach of any potentially applicable covenant of good faith and fair dealing, alleged misrepresentations (intentional or negligent), alleged violation of public policy, alleged tortious conduct, including but not limited to assault and battery, the negligent or intentional infliction of emotional distress, defamation, and intentional interference with a business expectancy or contractual relationship, whether under the Employee Retirement Income Security Act, the Fair Labor Standards Act and/or its interpreting regulations or their applications by the United States Department of Labor or the courts, Title VII of the Civil Rights Act, the Age Discrimination in Employment Act, the Americans With Disabilities Act, the Rehabilitation Act of 1973, the Family and Medical Leave Act, the Civil Rights Act of 1991, the Arizona Wage Act, the Arizona Civil Rights Act, the Arizona Employment Protection Act, or any other federal law, state law, ordinance, common law, or administrative regulation, and including claims arising out of costs, expenses, and attorneys' fees, regardless of whether or not such claims or liabilities are known to the Parties at the time of execution of this Agreement.

      12.    Except as otherwise expressly provided herein, SunState hereby fully releases and forever discharges Reid and George Reid, any and all of their agents, principals, employers, attorneys, or employees of any of them, from any and all claims or liabilities of any

5

nature whatsoever that it has, or claims to have, arising out of any actions whatsoever undertaken, or not undertaken, by Reid and George Reid, any and all of their agents, principals, employers, attorneys, or employees of any of them, as of the date of execution of this Agreement. Except as otherwise expressly provided herein, this release includes but is not limited to any and all claims based upon any alleged acts or omissions under any Producer Agreement and/or any Producer Draw Agreement.

13.     By entering into this Agreement, none of the Parties are admitting any liability for any claims or causes of action that any one of the Parties may claim to have. This Agreement shall not be construed as an adjudication, finding or admission that the Parties to this Agreement have acted improperly or are liable to any Party to this Agreement for any past or present act or omission relating to the subject matter of the Lawsuit or otherwise, but instead is an agreement arising from the Parties' settlement of all disputed claims and causes of action between them.

14.     Reid agrees not to sue, to file a "consent to participate," or to make a claim or demand in any action or proceeding against the Defendants claiming unpaid overtime under the FLSA. Further, Reid agrees to refuse to accept any money, benefit, or other relief from any FLSA proceeding against the Defendants whether brought by Reid or any other person, agency or entity.

15.     The Parties warrant and represent that they have not assigned or transferred to anyone any of the legal rights or claims that they are releasing with this Agreement. Reid further agrees that this Agreement binds any and all persons who might assert FLSA claims on Reid's behalf or through her.

16.     Reid agrees not to seek employment with SunState or any of its successors, subsidiaries, or affiliate companies at any time in the future. This provision does not prohibit Reid from seeking employment or contracting with an insurance carrier that is not a successor to, subsidiary of, or an affiliate of SunState.

17.     The Parties agree that notwithstanding any other provision in this Agreement, the Protective Order entered on February 16, 2011, by the Court remains in full force and effect. In addition, the Parties agree that within 60 days of the execution of this Agreement, Defendants' counsel will make arrangements to pick up from Matheson all documents produced by Defendants in the course of informal and formal disclosure or discovery in the Lawsuit that were designated "Confidential" pursuant to the February 16, 2011 Protective Order (collectively, "Confidential Documents"). Confidential Documents include all copies of the documents (with the sole exception of Matheson's retention of a set of the Confidential Documents for her file), including those provided to Plaintiff's testifying or consulting experts. Reid, George Reid, and their counsel are prohibited from using for any purpose, disclosing, or providing access to any Confidential Documents, or any facts contained in any Confidential Documents (in part or in whole) to any individual or entity, except for purposes related to the Lawsuit.

18.     Reid agrees that within 30 days of the execution of this Agreement, she will permanently remove any reference to the effect that she is currently an agent or employee of SunState that she has made on any and all websites, including but not limited to LinkedIn.

19.     Reid agrees that within 30 days of the execution of this Agreement, she will permanently disable the Facebook page she created for or about SunState.

20.     Reid understands and agrees that her receipt of this Agreement shall constitute written notice to her to consult with an attorney prior to executing this Agreement.

21.   Defendants agree to permit Reid to provide an executed copy of the letter attached hereto as Exhibit D to prospective employers, verifying her dates of employment with SunState.

22.   The laws of the State of Arizona will apply to this Agreement.

23.   This Agreement may only be modified in writing signed by a duly authorized representative of the Parties.

24.   Reid agrees that she has carefully and fully investigated and now understands the nature and extent of the claims against the Defendants that she is releasing with this Agreement. Reid agrees that (i) she has been actively and effectively represented by counsel in the negotiation and preparation of the terms and conditions of this Agreement; (ii) she has had a full and fair opportunity to review this Agreement, and actually has discussed it with her attorney before signing it; (iii) she realizes that this Agreement contemplates the extinction of all of her claims against Defendants; and (iv) she signs this Agreement knowingly, voluntarily and without duress or coercion.

25.   This Agreement is entered into for settlement purposes only. The Parties agree that this Agreement does not constitute an admission by Defendants of any FLSA violation or any FLSA liability to Reid or of any obligation to Reid for unpaid wages, overtime, commissions, back pay, front pay, or any other damages.

26.   Reid and SunState recognize and agree that the Court must approve this Agreement and the settlement of Reid's FLSA claims against Defendants and that this Agreement shall not be effective or enforceable until such approval and dismissal occurs. Therefore, Reid and the Defendants agree that the settlement contemplated by this Agreement is expressly contingent on such approvals and the dismissal with prejudice of all of Reid's claims

8

in the Lawsuit and further agree that, if such approval is not given or the dismissal does not occur, this Agreement is void *ab initio* and cannot be used or referred to for any purpose whatsoever.

27.    The Parties agree to use their best efforts and to cooperate to the extent reasonably necessary in order to implement this Agreement.

28.    If any Party initiates proceedings for breach of this Agreement, the prevailing party shall recover his, her, or its attorneys' fees and costs, including such fees and costs on any enforcement or appeal proceedings.  The United States District Court for the District of Arizona will have continuing jurisdiction to construe, interpret and enforce the provisions of this Agreement, and to hear and adjudicate any dispute or litigation arising from this Agreement.

29.    This Agreement, any amendments or modifications to it, and any other documents required or contemplated to be executed in order to consummate this Agreement, may be executed in one or more counterparts, each of which will be deemed an original of this Agreement.  All counterparts of any such document together will constitute one and the same instrument. Facsimile signatures shall be deemed to be effective as original signatures.

Dated: 5/11/11 _____          _____
                                   JILL REID

Dated: 5/11/11 _____          _____
                                   GEORGE REID

Dated: 5/11/11 _____          SUNSTATE INSURANCE AGENCY

                                   By _____
                                   Its: _President._____

Dated: 5/11/11 _____          _____
                                   JEFFREY LASCALA

Dated: 5/11/11 _____          _____
                                   LISA LASCALA

APPROVED AND AGREED AS TO
PARAGRAPHS 3 THROUGH 5:

Dated: 5/11/11 _____          _____
                                   MICHELLE MATHESON

10

# EXHIBIT A

1   **RYLEY CARLOCK & APPLEWHITE**
One North Central Avenue, Ste. 1200
2   Phoenix, Arizona 85004-4417
Telephone:   602/258-7701
3   Telecopier:   602/257-9582

4   Kara A. Ricupero – 020647
kricupero@rcalaw.com
5   John M. Fry – 020455
jfry@rcalaw.com
6   Charitie L. Hartsig – 025524
chartsig@rcalaw.com
7   Attorneys for Defendants, Counterclaimant, and
Third Party Claimant

8
**MATHESON & MATHESON, P.L.C.**
9   14358 N. Frank Lloyd Wright Blvd., Ste. 11
Scottsdale, Arizona 85260
10   Telephone:   480/889-8951

11   Michelle R. Matheson – 019568
mmatheson@mathesonlegal.com
12   Attorneys for Plaintiff, Counterdefendant, and
Third Party Defendant

13
**IN THE UNITED STATES DISTRICT COURT**

14   **FOR THE DISTRICT OF ARIZONA**

15

| | |
|---|---|
| 16  Jill Reid, a married woman,<br><br>17         Plaintiff,<br><br>18   vs.<br><br>19   LaScala Insurance, Inc. d.b.a. SunState Insurance Agency and Sun State Insurance LaScala Agency, a domestic corporation, and Jeffery T. and Lisa LaScala, husband and wife,<br><br>20<br><br>21         Defendants. | No. CV10-2410-PHX-JRG<br><br><br>**JOINT MOTION TO APPROVE SETTLEMENT AGREEMENT AND DISMISS LAWSUIT WITH PREJUDICE** |
| 22   LaScala Insurance, Inc. d.b.a. SunState Insurance Agency, a domestic corporation,<br><br>23<br><br>24         Counterclaimant/<br>         Third Party Claimant,<br><br>25<br><br>26   vs.<br><br>27   Jill and George Reid, husband and wife,<br><br>28         Counterdefendant and<br>         Third Party Defendant. | (Assigned to the Honorable<br>Joseph R. Goodwin) |

1395444.1
4/21/11

1  Plaintiff/counterdefendant Jill Reid ("Reid"), third party defendant George Reid,

2  defendant/counterclaimant/third party claimaint LaScala Insurance Agency, Inc. d.b.a.

3  SunState Insurance Agency ("SunState"), and defendants Jeffery LaScala and Lisa

4  LaScala (collectively, the "Parties") jointly move the Court to approve their Settlement

5  Agreement (attached hereto as Exhibit "1") and dismiss this lawsuit with prejudice.

6  This Motion is supported by the following Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

7

8  **I.    FACTUAL AND PROCEDURAL BACKGROUND**

9  Reid filed her Complaint against SunState and Jeffery LaScala and Lisa LaScala

10  (collectively, "Defendants") on November 8, 2010, alleging that Defendants violated

11  the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, (the "FLSA") by failing to pay

12  her for all hours worked in excess of 40 in certain workweeks (Count I).  In addition to

13  her FLSA claim, Reid also asserted claims for violation of the Arizona Wage Act,

14  A.R.S. § 23-350 *et seq.*, (Count II) and breach of contract (Count III).   Defendants

15  denied the material allegations of the Complaint.  Defendants specifically denied that

16  Reid was covered under the FLSA's overtime provisions on the grounds that while Reid

17  was an employee of SunState, she qualified for one of the FLSAs exemptions from

18  overtime pay, and that she was an independent contractor and not an employee for

19  approximately 19 of the 30 months of her relationship with SunState.

20  SunState also asserted counterclaims against Jill Reid and George Reid for

21  breach of contract (Count I), breach of the covenant of good faith and fair dealing

22  (Count II), and, in the alternative, unjust enrichment (Count III).

23  Prior to participating in mediation, the Parties exchanged disclosures and

24  discovery requests, pursuant to which the Parties produced voluminous documents,

25  including e-mail correspondence, reports reflecting Reid's activities on the computer

26  systems used to service SunState's customers, and a Producer Agreement pursuant to

27  which Reid agreed to "contract with [SunState] to act as an independent contractor

28  producing and servicing insurance products for SunState."  In addition, Reid issued

1  subpoenas duces tecum to third parties, including but not limited to Reid's cellular

2  phone provider and EZ Lynx, a third party comparative quoting service for insurance

3  products.

4       On March 24, 2011, the Parties participated in a mediation with Mediator

5  Christopher Skelly.  In preparation for the mediation, the Parties submitted detailed

6  mediation memoranda to Mr. Skelly.  The mediation lasted approximately eight hours.

7       As a result of the March 24, 2011 mediation, the Parties reached a settlement of

8  all claims in this matter.   While agreeing to settlement, Defendants deny any

9  wrongdoing under the FLSA and deny that they owe Reid any compensation or

10  associated penalties.   Nevertheless, the Parties have negotiated a settlement in this

11  matter and executed the attached Settlement Agreement to avoid the costs and

12  uncertainties of additional litigation.  The proposed settlement consists of payment to

13  Reid of $30,000 for allegedly unpaid overtime ($15,000 in wages and $15,000 in

14  liquidated damages), and payment of $25,000 to Reid's counsel for her attorneys' fees

15  and costs.

16  II.    LEGAL ARGUMENT

17       A.    The Proposed Settlement of Reid's FLSA Claim Is Fair and
              Reasonable
18

19       Claims for unpaid wages arising under the FLSA may be settled or compromised

20  only with the approval of the District Court or the Secretary of Labor.  *Lynn's Food*

21  *Stores, Inc. v. United States*, 679 F.2d 1350, 1352-55 (11th Cir. 1982); *see also*

22  *McBurnie v. City of Prescott*, No. CV-09-8139-PCT-FJM, 2010 WL 5344927, at *2 (D.

23  Ariz. Dec. 22, 2010) ("The FLSA provides two avenues for claim resolution.  First,

24  under section 216(c), the Secretary of Labor can supervise an employer's voluntary

25  payment to employees of unpaid wages. . . .  Or, under section 216(b), an employee can

26  bring a private action for back wages under the FLSA and can present to the district

27  court a proposed settlement, and the district court may enter a stipulated judgment after

28  scrutinizing the settlement for fairness.") (internal citations and quotations omitted).

1    Because Reid elected to litigate her FLSA claims against Defendants in the
2  United States District Court, the Parties request that the Court approve their settlement
3  as set forth in the attached Settlement Agreement as a fair and reasonable resolution of a
4  bona fide dispute and dismiss all of the claims asserted by the Parties with prejudice.
5  *See Hand v. Dionex Corp.*, No. CV 06-1318-PHX-JAT, 2007 WL 3383601, at *1 (D.
6  Ariz. Nov. 13, 2007) ("[B]ecause Plaintiffs filed a FLSA action against Defendant, the
7  parties must seek approval of their stipulated settlement in order to ensure the
8  enforceability of the Settlement Agreement. . . . The Court may approve the settlement
9  if it reflects a 'reasonable compromise over issues.'" (quoting *Lynn's Food*, 679 F.2d at
10  1354)).
11    Settlement of FLSA claims are permissible because the initiation of the lawsuit
12  provides some assurances of an adversarial context in which the employee is likely to be
13  represented by an attorney who can protect his or her rights; indeed, there is a "strong
14  presumption" in favor of finding such settlements to be fair. *Dail v. George A. Arab*
15  *Inc.*, 391 F. Supp. 2d 1142, 1146 (M.D. Fla. 2005) (quoting *Cotton v. Hinton*, 559 F.2d
16  1326, 1331 (5th Cir. 1977)). If a settlement in an FLSA lawsuit reflects a "reasonable
17  compromise over issues, such as computation of back wages that are actually in
18  dispute," the district court may approve the settlement in order to "promote the policy of
19  encouraging settlement of litigation." *Lynn's Food*, 679 F.2d at 1354.
20    Factors courts consider in determining whether a proposed settlement is fair and
21  reasonable include: the strength of the plaintiff's case; the risk, expense, complexity,
22  and likely duration of further litigation; the amount offered in settlement; the extent of
23  discovery completed and the stage of the proceedings; the experience and views of
24  counsel; and the plaintiff's reaction to the proposed settlement. *Almodova v. City &*
25  *County of Honolulu*, Civil No. 07-00378 DAE-LEK, 2010 WL 1372298, at *4 (D. Haw.
26  Mar. 31, 2010) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).
27  In this case, all factors weigh heavily in favor of a finding that the proposed settlement
28  agreement is fair and reasonable.

1.     **Strength of Reid's Claim**

Here, Defendants' liability for overtime wages under the FLSA is a vigorously contested issue. Reid claims that she was a non-exempt employee entitled to overtime from October 2007 until January 27, 2010, when her relationship with SunState ended. Defendants maintain that while Reid was an employee of SunState from October 2007 until June 23, 2008, during that time period she qualified for the FLSA's exemption for administrative employees. Defendants further maintain that from June 23, 2008, when the Parties executed a Producer Agreement, until January 27, 2010, Reid was an independent contractor and thus outside of the FLSA's protections altogether.

In addition, the Parties dispute whether Reid worked more than 40 hours in any given workweek. Reid claims she worked over 1,150 hours of uncompensated overtime. Defendants assert that Reid never worked in excess of 40 hours in any given workweek. Even if Reid was entitled to overtime pay, the parties dispute whether her rate of overtime pay should be ½ or 1 ½ times her regular rate of pay. *See* 29 C.F.R. § 788.114(a); *compare Urnikis-Negro v. Am. Fam. Prop. Servs.*, 616 F.3d 665, 681-82 (7th Cir. 2010), *cert. denied*, --- S. Ct. ----, 2011 WL 588987 (2011) (employee who was misclassified as exempt under the FLSA and who was paid a fixed salary "for any and all hours that she worked" was entitled to be paid an overtime premium of one-half of the employee's regular rate of pay) *with Russell v. Wells Fargo & Co.*, 672 F. Supp. 2d 1008, 1016 (N.D. Cal. 2009).

Finally, Defendants assert that any violation of the FLSA, if any, was not willful, and therefore Reid's FLSA claim is subject to a two-year limitation period instead of three years. Reid's claim contemplates a three year statute of limitations.

Given the "strengths and potential weaknesses in [Reid's] case, . . . the first factor weighs in favor of approving the settlement." *Almodova*, 2010 WL 1372298, at *4 (concluding that the first factor—the strength of plaintiff's case—weighed in favor of approving the settlement where "the factual elements of the uncompensated work claims may be difficult to prove," there was a split in authority regarding a pertinent

-5-

1    legal issue, and defendants had raised "various defenses," including FLSA exemptions);

2    *see also Hand*, 2007 WL 3383601, at *1 ("The Court has reviewed the proposed

3    Settlement Agreement and finds that it does in fact reflect a fair and reasonable

4    resolution of the issues. Defendant strongly contested liability under the FLSA;

5    claiming the Plaintiffs were exempt employees.  Further, even if the Plaintiffs could

6    have proven liability, they would have faced difficulty establishing that each Plaintiff

7    worked more than 40 hours per week or 8 hours per day."); *Prater v. Commerce*

8    *Equities Mgmt. Co.*, No. H-07-2349, 2008 WL 5140045, at *2 (S.D. Tex. Dec. 8, 2008)

9    (approving "proposed settlement as a fair and reasonable compromise of a bona fide

10   dispute under the FLSA" where there were "genuine disputes over whether the FLSA

11   appl[ied] . . ., [and] the amount of backpay due").

12               **2.    Risks, Expense, Complexity, and Duration of Further
13                      Litigation**

14           The Parties acknowledge that there are risks inherent in all litigation.  This is

15   particularly true in this case, given both the strengths and weaknesses in Reid's claim as

16   outlined above.

17           In addition, further litigation in this matter would likely be complex, of

18   substantial duration, and extremely costly; indeed, Reid has already incurred

19   approximately $25,000 in attorneys' fees prior to any depositions taking place or

20   motions for summary judgment filed.  Accordingly, this second factor also weighs in

21   favor of approving the settlement. *See Almodova*, 2010 WL 1372298, at *5 (where the

22   "risk of each of Plaintiffs' claims varie[d]" and there were unsettled legal issues, the

23   risk of further litigation "support[ed] settlement approval"); *cf. Collins v. Sanderson*

24   *Farms, Inc.*, 568 F. Supp. 2d 714, 726 (E.D. La. 2008) ("A trial of this matter is likely

25   to last several weeks, and involve much expense. . . . Without this settlement and its

26   formula (a formula the Court finds to be fair and reasonable), extensive individual

27   litigation might be needed to calculate what are on average small back wage claims, and

28   it would be uneconomical for plaintiffs to proceed to trial individually.").

### 3.   Amount Offered in Settlement

Reid contends that she worked 1,150 hours of unpaid overtime, which equals approximately ten weeks of overtime each week since October 2007.  Reid further contends that her overtime rate of pay should be $30.29, which is 1 ½ times her regular hourly rate of $20.20 (when employed by SunState, Reid was paid an annual salary of $42,000 per year), for a total wage claim of $34,833.50, plus a claim for liquidated damages in an equal amount.  While defendants vigorously contest Reid's entitlement to any overtime compensation whatsoever on the grounds that, among others, she was not covered by the FLSA, her claim is partially barred by the applicable statute of limitations, and the appropriate overtime rate would be half-time in any event, defendants have agreed to pay Reid $15,000, plus an additional $15,000 as liquidated damages, in settlement of her FLSA claims.  Defendants have further agreed to pay Reid's counsel $25,000 for Reid's attorneys' fees and costs allegedly incurred.

The Parties are in agreement that the amount offered in settlement is fair.  Accordingly, this factor weighs in favor of approving the settlement.  *See Almodova*, 2010 WL 1372298, at *5; *Gribble v. Cool Transports Inc.*, No. CV 06-04863 GAF (SHx), 2008 WL 5281665, at *9 (C.D. Cal. Dec. 15, 2008) ("[I]t is important to remember that the [proposed settlement amount] is a better option than not receiving any compensation, which is a reasonable possibility given the questions surrounding Plaintiff's claims . . . . The Court therefore concludes that this factor weighs in favor of final approval.").

### 4.   Stage of the Proceedings

Both formal and informal discovery have taken place in this case.  That discovery has allowed both sides to make a realistic and informed evaluation of the case.  As a result, the Parties feel that settlement at this early stage in the litigation is appropriate.  *See Almodova*, 2010 WL 1372298, at *5 (the fact that the parties had "conducted sufficient discovery to allow a realistic evaluation of the case" yet "significant discovery" and "motion practice and trial preparation remained" "favor[ed]

-7-

1   approval of the settlement"); *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1:08cv1310

2   (AJT/JFA), 2009 WL 3094955, at *11 (E.D. Va. Sept. 28, 2009) ("These proceedings

3   advanced to a stage sufficient to permit the Parties and their counsel to obtain and

4   review evidence, to evaluate their claims and defenses and to engage in informed arms-

5   length settlement negotiations with the understanding that it would be a difficult and

6   costly undertaking to proceed to the trial of this case.").

7           **5.      Experience and Views of Counsel**

8           The Parties' counsel have extensive experience in FLSA litigation, particularly

9   John Fry, counsel for Defendants, and Michelle Matheson, counsel for Reid. Mr. Fry

10  has defended clients against FLSA claims in federal district courts in Florida, West

11  Virginia, and Arizona. Ms. Matheson has handled FLSA lawsuits in both the state and

12  federal courts in Arizona. Both Mr. Fry and Ms. Matheson "believe that the settlement

13  should be approved." *See Almodova*, 2010 WL 1372298, at *5 (finding that where

14  plaintiff's counsel had "extensive experience in FLSA litigation" and "believ[ed] the

15  settlement should be approved," the experience and views of counsel weighed in favor

16  of settlement approval); *see also Gribble*, 2008 WL 5281665, at *9 (C.D. Cal. Dec. 15,

17  2008) ("Great weight is accorded to the recommendation of counsel, who are most

18  closely acquainted with the facts of the underlying litigation. . . . Furthermore, a

19  presumption of fairness applies when settlements are negotiated at arm's length,

20  because of the decreased chance of collusion between the negotiating parties.") (internal

21  quotations and citations omitted).

22          **6.      Reid's Reaction to the Settlement**

23          Here, Reid, who was represented by counsel, made the decision to accept the

24  settlement offer recommended by the mediator. This factor, therefore, weighs in favor

25  of settlement approval. *Almodova*, 2010 WL 1372298, at *6.

26      **B.      Attorneys' Fees**

27          As stated above, the proposed settlement provides for payment of $25,000 for

28  Reid's attorneys' fees and costs. Ms. Matheson avows that attorneys fees and costs

1   expended by her and her associates and/or paralegals are reasonable and notes that she

2   has recovered equivalent fees in multiple actions in this District.  The Defendants do not

3   oppose the amount of the recovered attorneys' fees and costs.

4   **III.    CONCLUSION**

5        The Parties believe the proposed settlement represents a fair and reasonable

6   compromise of the disputed issues in this case. The Parties therefore request that the

7   Court rule that the Settlement Agreement represents a fair and equitable resolution of

8   this action and dismiss the Parties' claims with prejudice.

9        RESPECTFULLY SUBMITTED this _____ day of May, 2011.

10            RYLEY CARLOCK & APPLEWHITE

11

12            By:_____

13                Kara A. Ricupero
                  John M. Fry

14                Charitie L. Hartsig
                  One North Central Avenue, Suite 1200
                  Phoenix, Arizona 85004-4417

15                Attorneys for Defendants

16            MATHESON & MATHESON

17

18            By:_____
                  Michelle R. Matheson

19                14358 N. Frank Lloyd Wright Blvd.
                  Suite 11

20                Scottsdale, Arizona 85260
                  Attorney for Plaintiff

21

22

23

24

25

26

27

28

1

## CERTIFICATE OF SERVICE

2     I hereby certify that on May _____, 2011, I electronically transmitted the

3  attached document to the Clerk's office using the CM/ECF System for filing, and that I

4  transmitted a Notice of Electronic Filing to the following CM/ECF registrant(s):

5

6     Michelle R. Matheson, Esq.
      Matthew E. Walls, Esq.
7     MATHESON & MATHESON, P.L.C.
      14358 N. Frank Lloyd Wright Blvd., Ste. 11
8     Scottsdale, Arizona 85260
      Attorneys for Plaintiff
9

10  By: _____

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT B

1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                       FOR THE DISTRICT OF ARIZONA

8    Jill Reid, a married woman,                    No. CV10-2410-PHX-ROS

9              Plaintiff,

10       vs.                                         ORDER OF DISMISSAL
                                                     WITH PREJUDICE
11   LaScala Insurance, Inc. d.b.a. SunState
     Insurance Agency and Sun State
12   Insurance LaScala Agency, a domestic
     corporation, and Jeffery T. and Lisa
13   LaScala, husband and wife,

14             Defendants.

15   LaScala Insurance, Inc. d.b.a. SunState        (Assigned to the Honorable
     Insurance Agency, a domestic                    Joseph R. Goodwin)
16   corporation,

17                 Counterclaimant/
                   Third Party Claimant,
18
         vs.
19
     Jill and George Reid, husband and wife,
20
                   Counterdefendant and
21                 Third Party Defendant.

22        Having Considered the Joint Motion to Approve Settlement Agreement and

23   Dismiss Lawsuit with Prejudice, the executed Settlement Agreement of the parties, and

24   all accompanying exhibits thereto, and good cause appearing,

          IT IS HEREBY ORDERED that this case shall be dismissed with prejudice.
25
          DATED this ___ day of _____, 2011.
26

27

28

     1395498.1
     4/21/11

# EXHIBIT C

$12,500.00                                              May _____, 2011
                                                        Phoenix, Arizona

### Promissory Note

For consideration received, the undersigned SunState Insurance Agency, Jeffery LaScala, and Lisa LaScala (the "Makers"), promises to pay to Matheson & Matheson PLC (the "Holder"), a sum of twelve thousand five hundred dollars ($12,500.00). Payments shall be made to the Holder by mailing each payment to:

> Michelle R. Matheson
> c/o Matheson & Matheson, P.L.C.
> 14358 N. Frank Lloyd Wright Blvd., Ste. 11
> Scottsdale, AZ 85260

Payments shall be made in five (5) equal monthly installments of $2,500.00, commencing on the day stated in the Settlement Agreement executed by the Makers and the Holder on May _____, 2011, and continuing on the same date of each calendar month thereafter for four (4) consecutive months. If a payment date is not a business day, then payment shall be due on the next business day. The Makers or their successor in interest may prepay all or any portion of the unpaid principal due hereunder at any time, without premium or penalty.

In the event Makers fail to pay any installment hereunder within ten (10) business days of the date any such installment is due, Holder, at her option, may declare the entire unpaid principal balance of this Note to be immediately due and payable, by delivering to the Makers written notice of the acceleration of this Note (the "Notice"). The Notice shall be delivered to SunState Insurance Agency, 5212 N. Central Ave., Phoenix, Arizona 85012. If the Makers do not pay the principal balance within five (5) business days of receiving the Notice, Makers consent to the entry of judgment against them in the amount of the unpaid principal balance, with interest accruing at the Arizona statutory rate as of the date of the Makers' failure to pay the monthly installment payment.

No provision of this Note may be amended, modified, supplemented, changed, waived, discharged or terminated, except by an instrument in writing signed by the Holder and Makers.

This Note is executed, delivered and payable in, and shall be governed by and construed according to the substantive laws and judicial decisions of, the State of Arizona, regardless of Arizona conflict of laws principles.

"Makers"

SUNSTATE INSURANCE AGENCY

By:_____

Its: _____

_____
Date

JEFFERY LASCALA

_____

_____
Date


LISA LASCALA

_____

_____
Date


Witness:

_____

$17,500.00                                                      May _____, 2011
                                                               Phoenix, Arizona

## Promissory Note

      For consideration received, the undersigned, SunState Insurance Agency, Jeffery LaScala, and Lisa LaScala (the "Makers"), promises to pay to Jill Reid (the "Holder"), a sum of seventeen thousand five hundred dollars ($17,500.00). Payments shall be made to the Holder by mailing each payment to:

                    Jill Reid
                    2019 West Roma Avenue
                    Phoenix, Arizona 85015

      Payments shall be made in seven (7) equal monthly installments of $2,500.00 (minus any applicable federal and state income taxes and any applicable FICA and/or FUTA taxes), commencing on the day stated in the Settlement Agreement executed by the Makers and the Holder on May ____, 2011, and continuing on the same date of each calendar month thereafter for six (6) consecutive months. If a payment date is not a business day, then payment shall be due on the next business day. The Makers or their successor in interest may prepay all or any portion of the unpaid principal due hereunder at any time, without premium or penalty.

      In the event Makers fail to pay any installment hereunder within ten (10) business days of the date any such installment is due, Holder, at her option, may declare the entire unpaid principal balance of this Note to be immediately due and payable, by delivering to the Makers written notice of the acceleration of this Note (the "Notice"). The Notice shall be delivered to SunState Insurance Agency, 5212 N. Central Ave., Phoenix, Arizona 85012. If the Makers do not pay the principal balance within five (5) business days of receiving the Notice, Makers consent to the entry of judgment against them in the amount of the unpaid principal balance, with interest accruing at the Arizona statutory rate as of the date of the Makers' failure to pay the monthly installment payment.

      No provision of this Note may be amended, modified, supplemented, changed, waived, discharged or terminated, except by an instrument in writing signed by the Holder and Makers.

      This Note is executed, delivered and payable in, and shall be governed by and construed according to the substantive laws and judicial decisions of, the State of Arizona, regardless of Arizona conflict of laws principles.

1388941.1
4/4/11

"Makers"

SUNSTATE INSURANCE AGENCY

By:_____

Its: _____

_____
Date

JEFFERY LASCALA

_____

_____
Date

LISA LASCALA

_____

_____
Date

Witness:

_____

# EXHIBIT D

May. 11. 2011 10:01AM                                No. 2211   P. 31



May _____, 2011

Dear Sir or Madam:

Please accept this letter as official verification that Jill M. Reid began working for SunState Insurance Agency from May 2007 as a customer service representative. From June 2008 through January 2010, she served as a licensed insurance agent for SunState.

Sincerely,

Jeffrey LaScala

1400568.1
5/5/11

www.SunStateInsurance.com

5212 N. Central Ave.                                   602.393.6000
Phoenix, AZ. 85012                                     Fax: 602.242.6885